UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAIME L. NATALI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-01281 |
| ) | JUDGE SHARP |
| WELLS FARGO BANK, NATIONAL ) | |
| ASSOCIATION; SHIRLEE STEVENS; ) | |
| AND DOES 1-20, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

In this action which was removed from the Davidson County Circuit Court, Plaintiff has filed a Motion to Remand (Docket No. 9), and Defendants have filed a Motion to Dismiss Complaint (Docket No. 5). Both Motions have been fully briefed by the parties. For the reasons that follow, the Motion to Remand will be granted because no diversity jurisdiction exists in this case and, as a consequence, this Court is without authority to consider the Motion to Dismiss.

### I. BACKGROUND

The following facts are drawn from Plaintiff's Complaint:

From April 7, 2000 to May 28, 2010, Plaintiff Jaime L. Natali was employed by Wachovia Bank as a Branch Manager. Beginning January 1, 2010, Defendant Wells Fargo Bank assumed Wachovia's operation, and Defendant Shirlee Stevens became Plaintiff's District Manager.

At some point, Plaintiff was terminated from her employment at Wells Fargo "for giving sales credit on accounts that she opened to her banker when he was not available to open the account." (Docket No. 1-1, Complaint ¶ 7). Plaintiff claims this "activity was permitted and

1

encouraged by Wachovia," but, unbeknownst to her, that activity "was proscribed by Wells Fargo," as being a "Code of Ethics Violation." (Id. ¶¶ 7 & 8).

After leaving Wells Fargo, Plaintiff was hired by U.S. Bank as a Customer Service Manager. She worked there from September 6, 2011, until she was terminated on May 17, 2012.

Plaintiff described the events surrounding her termination from U.S. Bank as follows:

> 13. On the afternoon of May 17, 2012, Plaintiff was asked to come into Rachel Watts' office for a meeting among her, Jennie Clark and Rachel Watts. At the end of that meeting, at or about 3:30 p.m., Jennie Clark informed Plaintiff that she had met Plaintiff's old District Manager at Wells Fargo, Shirlee Stevens.
>
> 14. Thinking that her meeting with Jennie Clark and Rachel Watts was over, Plaintiff went about counting her drawer out for the day. After she put up her drawer, Plaintiff went outside for a break.
>
> 15. At or about 3:45 PM on the afternoon of May 17, 2012, Plaintiff came back in from outside and was told that Jennie Clark and Rachel Watts wanted to see her again. Upon entry into Rachel Watts' office, Plaintiff was confronted by Jennie Clark about her work history with Wells Fargo in that it had been brought to her attention about Plaintiff's "past." Plaintiff explained to Jennie Clark her work history at Wells Fargo and answered her questions. Jennie Clark then told Plaintiff that she was lying and that it sounded like a "Code of Ethics Violation." Such words were exactly the words used by Shirlee Stevens in terminating Plaintiff at Wells Fargo and could have only been told to Jennie Clark by Shirlee Stevens, violating Plaintiff's right to privacy, defaming her and placing her in a false light with Jennie Clark and U.S. Bank.
>
> \*          \*          \*
>
> 18. At or about 4:40 PM on that afternoon, Plaintiff received a call at home from Jennie Clark, advising her that after contacting HR and Legal, that they had decided to terminate her for lying on her application.

(Id. ¶¶ 13-15 & 18).

After her termination from U.S. Bank, Plaintiff has been unable to find a job. She attributes this to the comments allegedly made by Ms. Stevens which resulted in her being fired by U.S. Bank for allegedly lying on her job application. Plaintiff goes on to allege that "the statements made by

2

Shirlee Stevens and Wells Fargo to Jennie Clark and U.S. Bank were knowingly false, deliberately misleading, disclosed for a malicious purpose, disclosed in reckless disregard or their falsity or defamatory nature and in violation of Plaintiff's right to privacy," or, alternatively, that Defendants "acted in reckless disregard of the truth or falsity of their communications that Plaintiff had committed a 'Code of Ethics Violation' or acted negligently in failing to ascertain whether that communication was true." (Id. ¶ 16).

Based upon these events, Plaintiff filed suit in state court, setting forth claims against Defendant Stevens for false light invasion of privacy, defamation/slander, and the negligent and/or intentional infliction of emotional distress. Those same causes of action are alleged against Defendant Wells Fargo under a theory of *respondeat superior*.

## II. DISCUSSION

Defendants removed this action invoking this court's diversity jurisdiction. In doing so, Defendants recognize that both Plaintiff and Ms. Stevens are citizens and residents of Tennessee, but argue that Ms. Stevens was fraudulently joined as a Defendant. They further assert that if Ms. Stevens were not fraudulently joined, there would be complete diversity as required by 28 U.S.C. § 1332, because "Wells Fargo is a national bank located in South Dakota for purposes of diversity analysis." (Docket No. 1 at 3).

Both in support of their Notice of Removal and in opposition to Plaintiff's Motion to Remand, Defendants rely upon Ms. Stevens' Declaration which is attached to the removal petition. In that declaration, Ms. Stevens claims that she has never spoken with Jennie Clark or Rachel Watts, that she has "never shared information related to [Plaintiff] with anyone outside of Wells Fargo, and that "[a]t no point" has she "ever discussed any matter relating to Jaime Natali with anyone at U.S.

Bank." (Docket No. 1-2, Stevens Decl. ¶¶ 3-5).

So far as relevant, 28 U.S.C. 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs and is – (1) against citizens of different states." 28 U.S.C. 1332(a)(1). Under this rule, "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). Where suit is filed in state court and complete diversity exists, the action may be removed to federal court in accordance with 28 U.S.C. 1441(b).

"Fraudulent joinder is 'a judicially created doctrine that provides an exception to the requirement of complete diversity.'" Casias v. Wal-Mart Stores, Inc., 695 F.3d 428, 432 (6th Cir. 2012) (quoting, Coyne v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)). It exists "when the non-removing party joins a party against whom there is no colorable cause of action." Walker v. Philip Morris USA, Inc., 443 Fed. App'x 946, 951-952 (6th Cir. 2011).

A claim is colorable when the allegations, if proven, could satisfy the elements of a state-law claim against the non-diverse defendant. Probus v. Charter Comm., LLC, 234 Fed. App'x 404, 407 (6th Cir. 2007). "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] court must remand the action to state court." Coyne, 183 F.3d at 493. In deciding whether a claim is colorable and the case has been properly removed, the court "must must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party," and "all doubts as to the propriety of removal are resolved in favor of remand." Id.

"The combination of the 'colorable' standard with the requirement that all ambiguities of

state law are to be resolved in favor of the non-removing party presents a significant hurdle." Kent State Univ. Bd. of Trustees v. Lexington Ins. Co., 2013 WL 216026 *4 (6th Cir. Jan. 22, 2013). "A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden."

Present Defendants have neither cleared the hurdle, nor carried their burden of showing that removal was proper because Ms. Stevens was fraudulent joined.

Defendants begin their substantive argument by stating that "[i]in fraudulent joinder cases, 'the underlying reason for removal is that there is no factual basis upon which it can be claimed that the resident defendant is jointly liable or where there is such liability there is no purpose to prosecute the action against the resident defendant in good faith.'" (Docket No. 13 at 3, emphasis omitted, quoting, Brady v. Indemnity Ins. Co., 68 F.2d 302, 303 (6th Cir. 1933). This is in keeping with the Sixth Circuit's later observation that "'[t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law. . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.'" Walker v. Phillip Morris USA, Inc., 443 Fed. App'x 946, 951 (6th Cir. 2011) (citation omitted).

Defendants' argument, however, actually supports remand in this case because Plaintiff is seeking to hold both defendants liable for the same causes of action, her claims against both hinge on the same allegations, and her claims against Wells Fargo live or die depending on whether Ms. Stevens made defamatory statements to U.S. Bank or others. And while Plaintiff's intent in suing Ms. Stevens may not be material to the fraudulent joinder issue, Jerome-Duncan, Inc. v. Auto-By-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999), Ms. Stevens is not a make-weight Defendant whose existence in this lawsuit merely serves to destroy diversity – she is the centerpiece of Plaintiff's

Complaint. See, In re Prempro Prod. Liab. Litig., 591 F.3d 613 (8th Cir. 2010) ("Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal.").

This conclusion is supported by Defendants' reliance on their Motion to Dismiss in their response in opposition to remand because, in that motion, Defendants claim that "plaintiff does not allege any separate actions or statement by Wells Fargo apart from her vague accusations against Ms. Stevens," and that "Plaintiff's only theory of liability as to Wells Fargo is *respondeat superior*." (Docket No. 6 at 8 & 11). There is no suggestion that the claims are barred as a matter of state law as to Ms. Stevens, but not Wells Fargo, making the claim against her fraudulent.

The essence of Defendants' argument in both their Motion to Dismiss and in opposition to remand is that Plaintiff's complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) based upon the standards announced in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, "[i]n order to establish fraudulent joinder, the defendant must 'do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion' since 'we do not focus on the artfulness of the plaintiff's pleadings.'" Block v. Toyota Motor Corp., 665 F.3d 944, 948 (8th Cir. 2011). That is, in analyzing a fraudulent joinder claim, a court is to "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion," Casias v. Wal-Mart Stores, inc., 695 F.3d 428, 433 (6th Cir. 2012), because the inquiry under Rule 12(b)(6) is whether the complaint as drafted "state[s] a claim for relief that is plausible on its face," Twombly, 550 U.S. at 570, while the fraudulent joinder inquiry is "'whether there is an arguably reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" Junk v. Terminix Intern. Co., 628 F.3d 439, 445 (8th Cir. 2010).

6

In this case, Defendants may have established that the complaint as presently drafted is not the most artful, but they have failed to show the lack of a colorable basis for Plaintiff's claims for defamation, false light invasion of privacy, and infliction of emotional distress against Ms. Stevens. All they arguably have shown is that Plaintiff may not have sufficiently pled her claims and may be unable to prove her claims against Ms. Stevens and, as a consequence, Wells Fargo. This hardly suggests that Ms. Stevens was fraudulently joined where the claims against her are the very claims against Wells Fargo, and where Wells Fargo admittedly can only be found liable if Ms. Stevens, too, is liable.

Effectively, Defendants are asking this Court to assume jurisdiction in a case where Plaintiff may not have adequately pled the state law claims against both the non-diverse and diverse defendants, and thereby receive a federal forum to argue their motion to dismiss. But that is not a proper use of the removal statue which requires that the removed case be one over which this Court would have original jurisdiction. See, 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed").

In sum, this is an action which was properly filed in state court because both the Plaintiff and Ms. Stevens are Tennessee residents. The Court lacks subject matter jurisdiction, and, therefore, cannot consider Defendants' Motion to Dismiss. See, Palkow v. CSX Transp., Inc., 431 F.3d 53, 556 (6th Cir. 2005) ("Being without jurisdiction, the District Court could not . . . address the merits of Plaintiff's complaint"); Rogers v. Stratton Indus., Inc., 798 F.3d 913, 917 (6th Cir. 1986) ("if a court does not have jurisdiction, *ipso facto*, it cannot address the merits of the case").

### III. CONCLUSION

7

Based on the foregoing, the Court will enter an Order granting Plaintiff's Motion to Remand and remanding this action to state court.

*[signature: Kevin H. Sharp]*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

8